**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3631-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GREGORY P. MAPLES, JR.,

    Defendant-Appellant.

_____

Submitted February 2, 2022 – Decided March 1, 2022

Before Judges Whipple and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 02-09-1247.

Joseph E. Krakora, Public Defender, attorney for appellant (Peter T. Blum, Assistant Deputy Public Defender, of counsel and on the brief).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel Marzarella, Chief Appellant Attorney, of counsel and on the brief).

PER CURIAM

Defendant Gregory P. Maples, Jr. appeals from the Law Division's order denying his motion for a new trial, following his conviction for first-degree murder, N.J.S.A. 2C:11-3, and second-degree conspiracy to commit murder, N.J.S.A. 2C:5-2(a)(1) and 2C:11-3.

The underlying facts were set forth in our unpublished opinion affirming defendant's conviction on direct appeal. State v. Maples (Maples I), No. A-6934-03 (App. Div. May 12, 2005).

> The evidence would support a finding that on April 28, 2002, defendant drove the victim, Rashon Roy, to the parking lot of an apartment complex. After defendant exited the car, another passenger, Renato Santos, got out of the vehicle and shot Roy multiple times. Witness testimony established that on April 25, 2002, defendant had accused the victim of trying to have him killed while he was in Philadelphia with his young son. Defendant was also involved in an incident during the early morning hours of April 26, in which another co-defendant held a gun to Roy's head and only desisted from shooting him after defendant ordered him not to. On this occasion also, defendant had asked Roy "why every time I go somewheres I feel like my life being threatened?" There was also testimony that on the morning of the murder, defendant discussed with co-defendants his belief that Roy had tried to have him killed in Philadelphia, and that Roy was trying to take over defendant's enterprise after defendant had "put [Roy] on his feet."
>
> [Id. (slip op. at 3) (alteration in original).]

Defendant was indicted for murder and conspiracy to commit murder. So too were co-defendants Marvin L. Worthy, Renato Santos, and Gregory P. Maples. Santos and Worthy were also each indicted for second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a). Co-defendant James J. Irwin was indicted for third-degree hindering apprehension, N.J.S.A. 2C:29-3, and second-degree aggravated arson, N.J.S.A. 2C:5-1 and 2C:17-1(a)(2). Irwin and co-defendant Ernesto Barber were indicted for third-degree theft, N.J.S.A. 2C:20-3.

Defendants were tried jointly. Worthy was the only defendant to testify at trial. The jury found defendant guilty of murder and conspiracy. On July 9, 2004, defendant was sentenced to a thirty-year term with a thirty-year period of parole ineligibility. The conspiracy count was merged into the murder count. Defendant appealed his conviction.

We rejected each of the six arguments raised by defendant on direct appeal, concluding they were "without sufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(2)," and commented "that the evidence concerning the events from April 25 through April 28, 2002, prior to the murder, did not constitute other crimes evidence for purposes of [N.J.R.E.] 404(b), and hence a [Rule] 104 hearing was not required pursuant to State v. Cofield, 127 N.J. 328, 338 (1992)." Maples I at 3-4. We also "reject[ed]

3

defendant's contention that the State improperly placed other crimes evidence before the jury by referring, implicitly, to defendant's drug dealing." Id. at 4. We found "that the prosecutor and all of the State's witnesses scrupulously refrained from any mention of defendant's alleged involvement in illegal drug sales." Ibid. The Supreme Court denied certification. State v. Maples, 185 N.J. 295 (2005).

On April 26, 2006, defendant filed a petition for post-conviction relief (PCR), raising eleven claims of ineffective assistance of counsel. State v. Maples (Maples II), No. A-5227-06 (App. Div. April 6, 2009) (slip op. at 1-2), certif. denied, 199 N.J. 541 (2009). Defendant also claimed lack of personal and subject matter jurisdiction due to an allegedly defective warrant, and that his sentence was excessive. Id. at 1. During oral argument before the PCR court, defendant also stated that there were witnesses that trial counsel did not call. Id. at 2. On March 9, 2007, the PCR court addressed and rejected each of defendant's claims on the merits. Ibid. The PCR court "noted that several of defendant's claims were procedurally barred under Rule 3:22-5, because they were, or could have been, 'adjudicated on direct appeal . . . .'" Ibid. On appeal, we concluded that defendant's contentions were "all 'without sufficient merit to warrant discussion in a written opinion.'" Ibid. (quoting R. 2:11-

3(e)(2)).  We affirmed the dismissal of defendant's PCR petition without an evidentiary hearing.  Id. at 3-4.

On September 28, 2008, defendant filed a motion for a new trial based on newly discovered exonerating evidence from a co-defendant.  Defendant claims he withdrew the motion because the co-defendant's appeal was still pending.

On March 17, 2017, defendant filed a motion for a new trial based on newly discovered evidence—co-defendant Worthy's affidavit dated February 13, 2017—pursuant to Rules 3:20-1 and 3:20-2.  In his affidavit, Worthy set forth his new version of the underlying facts.  Worthy claimed that Roy had argued with him over money he owed Roy for marijuana he received earlier in the week.  Worthy averred that he fatally shot Roy after Roy shot at him.  Worthy claimed that he never conspired with defendant or Santos in the commission of the homicide.

Worthy further averred that while he wanted to tell his version of the events, he was advised against it.  Worthy also alleged that when he learned the prosecutor was willing to offer him a plea bargain, he was willing to accept it, but counsel advised him that he had to convince the co-defendants to take the deal.

A-3631-18

Worthy claimed that he lied on the witness stand during the trial "because [his] trial attorney told [him] that since the prosecutors were using Ernesto Barber to lie, [he] needed to take the stand and lie." He claimed that Barber lied. Worthy took "full responsibility for [his] actions . . . ."

In his certification, defendant noted that after Worthy testified at trial in his own defense, defendant's attorney did not cross-examine him. Relying on Worthy's affidavit, defendant contends that Worthy was solely responsible for Roy's fatal shooting, and that Worthy is willing to testify that defendant was not a participant in the homicide and did not conspire to murder Roy. Defendant claimed that he was not apprised of the facts set forth in Worthy's affidavit "until after the affirmance of the judgment." Defendant contends the statements contained in Worthy's affidavit would alter the jury's verdict.

On November 28, 2017, the motion court heard oral argument. The court allowed defense counsel to submit supplemental documents to the court. On November 8, 2018, the court issued an order and written decision denying defendant's motion for a new trial, without conducting an evidentiary hearing. The court recounted the pertinent facts elicited at trial. We need not repeat them here.

Defendant argued that Worthy took full responsibility for the death of Roy and claimed defendant did not participate or conspire in Roy's murder.

6

The State asserts the new evidence is not material, but rather impeaching. Noting that Worthy is claiming that he perjured himself at trial, the State contends the affidavit would not change the jury's verdict because the jury did not find Worthy's testimony at trial credible.

The court found the case factually similar to State v. Artis, 36 N.J. 538 (1962). As in Artis, the motion court found the State's evidence was against defendant overwhelming. The court recounted the testimony of Barber in detail. It then noted that at trial, Worthy testified that he had nothing to do with Roy's murder and that he never pulled a gun on anyone. He further testified that he was not present during the events.

The court noted the jury heard this testimony and found defendant guilty. "Now, fifteen years later," defendant submits Worthy's affidavit, "who does not admit criminal liability, but rather asserts that he shot the victim in self-defense and places full responsibility on the victim for his own murder." The court found

> [Worthy's] affidavit to be unbelievable and not credible considering Worthy testified under oath that he wasn't in Lakewood on the day of the murder and was not involved in any of the events in late April 2002. Therefore, this affidavit would not change the jury's verdict similar to the ruling in Artis. Moreover, this affidavit fails the first prong of the test laid out in [State v. Smith, 29 N.J. 561 (1959)] as it is impeaching and contradictory.

A-3631-18

The court noted that Worthy also filed a motion for a new trial and "vehemently objected to the State using" his affidavit at his motion hearing.

Based on these findings, the court concluded it was not necessary to conduct an evidentiary hearing to "observ[e] Worthy under direct and cross-examination." This appeal followed.

Defendant raises a single point for our consideration:

> DEFENDANT'S NEW TRIAL MOTION SHOULD BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE CO-DEFENDANT'S AFFIDAVIT EXCULPATING DEFENDANT WAS NOT PATENTLY FALSE, AND BECAUSE THE MOTION COURT IMPROPERLY RELIED ON ITS FINDING FROM CO-DEFENDANT'S HEARING -- AT WHICH DEFENDANT AND HIS COUNSEL WERE NOT PRESENT -- THAT CO-DEFENDANT'S ACCOUNT LACKED CREDIBILITY.

Defendant argues that newly discovered evidence—Worthy's affidavit recanting his trial testimony and stating defendant was not involved in Roy's homicide—warrants a new trial. We are unpersuaded.

"A motion for a new trial based on the ground of newly-discovered evidence may be made at any time[.]" R. 3:20-2. Our Supreme Court has adopted a three-prong test for granting a new trial based on newly discovered evidence. State v. Carter, 85 N.J. 300, 314 (1981). Under that test,

> the movant seeking a new trial based on newly discovered evidence must demonstrate that the evidence is, indeed, newly discovered; a new trial is

A-3631-18

> warranted only if the evidence is "(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted."
>
> [State v. Szemple, 247 N.J. 82, 99 (2021) (quoting State v. Nash, 212 N.J. 518, 549 (2013)).]

All three prongs must be satisfied before a defendant is entitled to a new trial. State v. Ways, 180 N.J. 171, 187 (2004); accord Carter, 85 N.J. at 314.

"Newly discovered evidence must be reviewed with a certain degree of circumspection to ensure that it is not the product of fabrication, and, if credible and material, is of sufficient weight that it would probably alter the outcome of the verdict in a new trial." Ways, 180 N.J. at 187-88. "Courts generally regard recantation testimony as suspect and untrustworthy." State v. Carter, 69 N.J. 420, 427 (1976) (citing 58 Am. Jur. 2d New Trial § 175 (1976)); accord State v. Hogan, 144 N.J. 216, 239 (1996). "Consequently, the burden of proof rests on those presenting such testimony to establish that it is probably true and the trial testimony probably false." Ibid. (citing State v. Baldwin, 47 N.J. 379, 400 (1966)). Therefore, the judge must first "determine whether the recanting statement is believable." Ibid. (quoting State v. Puchalski, 45 N.J. 97, 108 (1965)).

9

Motions for a new trial based on newly discovered evidence are "not favored and should be granted with caution by a trial court since [they] disrupt[] the judicial process." State v. Conway, 193 N.J. Super. 133, 171 (App. Div. 1984) (citing State v. Haines, 20 N.J. 438, 443 (1956)). Such motions are "addressed to the sound discretion of the trial court, and its determination will not be reversed on appeal unless there has been a clear abuse of that discretion." Puchalski, 45 N.J. at 107 (quoting Artis, 36 N.J. at 541); accord State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000). That said, a "reviewing court must engage in a thorough, fact-sensitive analysis to determine whether the newly discovered evidence would probably make a difference to the jury." Ways, 180 N.J. at 191.

The mere raising of a claim of newly discovered evidence does not entitle the defendant to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rather, trial courts should grant an evidentiary hearing only if the defendant has presented a prima facie claim of newly discovered evidence warranting a new trial under the Carter test, material issues of disputed facts lie outside the record, and resolution of the issues necessitates a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013).

The same standard of review applies when a defendant files a motion or a petition for post-conviction relief seeking a new trial based on newly discovered evidence. Carter, 85 N.J. at 314. We review a trial court's denial of an evidentiary hearing for abuse of discretion. State v. Preciose, 129 N.J. 451, 462 (1992).

Considering defendant's contentions in light of the record and applicable law, we affirm the denial of defendant's motion for a new trial based on newly discovered evidence substantially for the reasons expressed in the motion court's written decision. We add the following comments.

Worthy's affidavit is utterly different than his testimony at trial that he had nothing to do with Roy's killing and was home when the events occurred. Recantation evidence that merely asserts that prior testimony or statements are false does not satisfy the first prong of the Carter test as it is merely "impeaching or contradictory." Carter, 85 N.J. at 314. In addition, defendant's involvement in the conspiracy and murder was corroborated by other evidence presented at trial that the jury clearly found to be credible.[1] Most telling was Worthy's strenuous opposition to the State's use of his own affidavit in

_____

[1] That evidence included "[t]estimony concerning earlier threats by defendant and co-defendants to kill the victim or to have him killed, and statements by defendant that would explain his motive for the killing, constitut[ing] both evidence of a continuing conspiracy to kill the victim and part of the res gestae." Maples I at 4.

opposition to his motion for a new trial. That strategic posture undermines its truthfulness and supports the motion court's conclusion that the affidavit was not believable or credible.

We also find that defendant did not satisfy the requirement that the newly discovered evidence could not have been discovered earlier through reasonable diligence. Here, defendant was sentenced in 2004 and his direct appeal was completed in 2005. His present motion for a new trial was filed almost twelve years later in March 2017. As pointed out by the State, Worthy is defendant's cousin and co-conspirator. They were tried jointly. Of import is "whether the evidence is, indeed, newly discovered . . . ." Szemple, 247 N.J. at 99. Notably, while defendant certified that he was not apprised of the facts contained in Worthy's affidavit until after we affirmed his conviction in 2005, he does not indicate when he first learned of Worthy's recantation. For this additional, independent reason, "the motion must fail because defendant cannot satisfy the 'reasonable diligence' requirement common to both motions." Id. at 100.

Defendant contends that the motion court erred by considering the credibility of Worthy's affidavit as part of its consideration of Worthy's motion for a new trial. We disagree. Defendant and Worthy were co-defendants who were charged in a single indictment and tried jointly. Worthy's new trial

12

motion was part of the same case. The court properly considered the submissions it reviewed and credibility findings it made relating to Worthy's new trial motion. See N.J.R.E. 201(b)(4) (a "court may judicially notice a fact, including . . . records of the court in which the action is pending . . . .").

Considering the totality of the circumstances, including the evidence of defendant's guilt, the finding that Worthy's affidavit was not credible or believable, the generally unreliable nature of recantations, and the fact that Worthy's affidavit is merely impeaching and contradictory, we are satisfied that Worthy's recantation at this late date does not satisfy the Carter criteria. See State v. Buonadonna, 122 N.J. 22, 51 (1991) (finding "sketchy evidence" insufficient to warrant a new trial). We discern no abuse of discretion or legal error in the court's consideration of the issue, or in its decision to deny the motion without conducting an evidentiary hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13
A-3631-18